

**FILED**
**Dec 12, 2018**
**11:34 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT GRAY

| | |
|---|---|
| **LOUIS WILSON,**<br>**Employee,**<br>**v.**<br>**O.G. KELLEY and CO.,**<br>**Employer,**<br>and<br>**THE HARTFORD,**<br>**Carrier.** | **Docket Number: 2018-02-0115**<br><br>**State File Number: 12598-2018**<br><br>**Judge Brian K. Addington** |

## EXPEDITED HEARING ORDER

This case came before the Court on December 4, 2018, on Mr. Wilson's request for medical and temporary total disability benefits for illness from lead exposure. O.G. Kelley (Kelley) countered that Mr. Wilson did not provide proper notice or present competent expert medical evidence to show his illness was work-related. For the reasons below, the Court holds Mr. Wilson is likely to succeed at a hearing on the merits in proving entitlement to a panel of physicians but not temporary disability benefits.

### History of Claim

Mr. Wilson worked as a machinist and foreman for Kelley, a lead products producer, from the 1990s until July 2017. His job required milling and burning lead products. In late 2005, Mr. Wilson began experiencing numbness and swelling in his legs, feet and hands, frequent headaches, and cognitive and stomach problems. He sought treatment from Dr. Richard Rolen.

Mr. Wilson told Dr. Rolen about his lead exposure at work and home. Mr. Wilson testified lead paint andceramic manufacturing caused his lead exposure at home. Mr. Wilson's lead test indicated a blood-lead level of 71, and Dr. Rolen referred him to Dr. Ray Lamb for treatment.

Mr. Wilson complained of fatigue, weight loss, headaches, and general anxiety to Dr. Lamb. Dr. Lamb also tested his blood, which results indicated a blood-lead level of

1

60. Dr. Lamb prescribed medication and continued to monitor his lead level over continued visits; however, his treatment notes ceased in March 2006. Mr. Wilson testified his home lead exposure ended at this time.

After treating with Dr. Lamb, Mr. Wilson continued to experience reflux, chest pain, fatigue and high blood pressure, so in October 2016 he sought treatment with Dr. Raymond Merrick, a cardiologist and internist.[1] Dr. Merrick noted Mr. Wilson's occupational lead exposure and referred him to a hematologist, and he came under the care of Dr. Charles Famoyin.

Dr. Famoyin noted Mr. Wilson's occupational lead exposure and that his lead blood level was 37.7 in June 2017. Although Mr. Wilson's lead level was elevated, he felt it was too low to order chelation therapy. Dr. Famoyin recommended further monitoring, but he was unsure whether all his medical problems derived solely from lead toxicity.

In early July 2017, Mr. Wilson was hospitalized for pain and other symptoms. His primary concern following discharge was his heart. Based on what his providers told him, he decided to quit his job on July 7. Afterward, Social Security granted him disability benefits.

While on disability, Mr. Wilson continued treatment with Drs. Merrick and Famoyin. On February 14, 2018, Dr. Merrick diagnosed hypertension, depression, lead exposure (chronic), neuropathy and fatigue, and he determined his employment with Kelley contributed more than fifty percent in causing the condition. He also found Mr. Wilson permanently and totally disabled. After months of testing, Dr. Famoyin found his lead level remained at 21.6.

Kelley declined to accept Dr. Merrick's disability statement, so Mr. Wilson filed a Petition for Benefit Determination (PBD) on February 20, which Kelley acknowledged it received. When the parties could not reach an agreement, Mr. Wilson filed a Request for Expedited Hearing.

In anticipation of the hearing, the parties deposed Dr. Merrick. He testified Mr. Wilson did not tell him about lead exposure outside work. He could not say Mr. Wilson was at maximum medical improvement (MMI) because "he could not predict the future," but he recommended no current treatment beyond the monitoring Dr. Famoyin ordered.

---

[1] Mr. Wilson introduced no notes from this visit, but Dr. Merrick's November 16, 2016 notes reference a visit occurred.

2

At the hearing, Mr. Wilson argued that he was entitled to medical and temporary disability benefits based on Dr. Merrick's opinion. Kelley countered that Dr. Merrick's opinion was invalid and should be excluded because he did not know about Mr. Wilson's lead exposure outside work and he lacked the necessary expertise to give a lead-exposure opinion. It also argued that Mr. Wilson failed to provide proper notice.

### Findings of Fact and Conclusions of Law

Mr. Wilson must present sufficient evidence that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2018).

First, regarding Kelley's notice defense, an injured employee must give written notice of an injury within fifteen days unless it can be shown that the employer had actual knowledge of the accident. Tenn. Code Ann. § 50-6-201(a)(1). When the employer raises lack of notice as a defense, the burden is on the employee to show either the employer had actual notice, that he provided notice, or that his failure to give notice was reasonable under the circumstances. *Hosford v. Red Rover Preschool*, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Oct. 2, 2014). The notice requirement "exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee." *Id.*

Although Mr. Wilson never provided written notice before he quit, Kelley acknowledged it received his PBD in February 2018. Dr. Merrick provided his causation opinion on February 14, and Mr. Wilson filed the PBD on February 20. Within six days of learning his work primarily caused his physical ailments, he informed the employer through the PBD. The Court holds he would likely prevail in proving timely notice.

Concerning medical benefits, Dr. Merrick primarily related Mr. Wilson's health problems to lead exposure at work. Kelley asserted his opinion was invalid because he is a cardiologist and internist, not an exposure expert, and his opinion was based on faulty information because he did not know about Mr. Wilson's lead exposure outside work. The Court finds these arguments unpersuasive.

Mr. Wilson presented an opinion from a physician, while Kelley relied on its own interpretations, rather than countervailing expert proof. "Parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. Int'l Paper Co.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Feb. 14, 2018). Moreover, nothing in the record indicated Mr. Wilson misled any doctor about his complaints. Further, he need not prove compensability by a preponderance of the evidence at this time. He must only show he would likely succeed at a hearing on the merits in proving entitlement to a panel of physicians.

In addition to Dr. Merrick, Dr. Famoyin's medical records also indicated Mr. Wilson suffered lead exposure and needed monitoring. Also, no one questioned whether Mr. Wilson worked with lead for over twenty years. Since the Court holds he is likely to succeed at a hearing on the merits, Kelley shall provide a panel of hematologists and schedule an appointment with the physician he chooses.

The second issue concerns temporary total disability benefits. The Court finds Mr. Wilson failed to prove entitlement to temporary total disability benefits at this time. To recover temporary total disability benefits, he must show (1) he is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Jewell v. Cobble Constr. and Arcus Restoration*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 12, 2015).

Dr. Merrick found Mr. Wilson permanently and totally disabled on February 2018, approximately seven months after he quit his job, but later he equivocated on his opinion in his deposition. If an employee is permanently and totally disabled, he is entitled to permanent benefits not temporary benefits. Mr. Wilson provided no other proof that a doctor took him off work. As Dr. Merrick's opinion is equivocal on MMI and work status, Mr. Wilson has not proven that he is likely to succeed at a hearing on the merits on this issue.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Kelley shall provide a panel of hematologists and schedule an appointment with the physician Mr. Wilson selects.

2.  Mr. Wilson's request for temporary disability benefits is denied at this time.

3.  This matter is set for a Scheduling Hearing on January 29, 2019, at 2:00 p.m. (EDT). **You must call toll-free at 855-543-5044 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.**

4.  Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED** this the 12th day of December, 2018.

_/S/ Brian K. Addington_
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Mr. Wilson's Affidavit
2. Wage Statement
3. Compilation of Medical Records
4. Digital Capture of Kelley's webpage
5. Deposition of Dr. Merrick

Technical Record:
1. PBD
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Mr. Wilson's Position Statement
5. Mr. Wilson's Exhibit List
6. Mr. Wilson's Witness List
7. Kelley's Position Statement
8. Kelley's Witness List

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Order was sent to the following recipients by the following methods of service on December 12, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Daniel Bieger, Employee's Attorney | | | X | dan@biegerlaw.com |
| Joseph Ballard, Employer's Attorney | | | X | joseph.ballard@thehartford.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name:_____  SF#:_____  DOI:_____

## Appellee(s)
**Appellee (Opposing Party):**_____ At Hearing: ☐Employer ☐Employee

Appellee's Address:_____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]    _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

    _____    Relationship: _____

    _____    Relationship: _____

    _____    Relationship: _____

    _____    Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

    Groceries       $ _____ per month     Telephone    $ _____ per month

    Electricity      $ _____ per month     School Supplies $ _____ per month

    Water         $ _____ per month     Clothing     $ _____ per month

    Gas           $ _____ per month     Child Care   $ _____ per month

    Transportation  $ _____ per month     Child Support  $ _____ per month

    Car           $_____ per month

    Other         $ _____ per month (describe: _____)

10. Assets:

    Automobile         $ _____     (FMV) _____

    Checking/Savings Acct. $ _____

    House              $ _____     (FMV) _____

    Other              $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____
NOTARY PUBLIC

My Commission Expires:_____